**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| REMARK HOLDINGS, INC.,<br>KAI-SHING TAO,<br><br>                     Plaintiffs,<br><br><br>              v.<br><br><br>POLITICO LLC, and<br>JOE ANUTA,<br><br>                     Defendants. | COMPLAINT<br><br>25-cv-_____- ( )<br><br><br><br>JURY TRIAL DEMANDED |

Plaintiffs Remark Holdings, Inc. and Kai-Shing Tao ("Plaintiffs"), by and through their attorneys, Hantman & Associates, for their Complaint against Defendants POLITICO LLC, and Joe Anuta ("Defendants,") allege as follows:

## INTRODUCTION

1.      This action arises from Politico LLC's publication of inaccurate, false, and defamatory statements concerning Plaintiffs Remark Holdings, Inc. ("Remark") and its Chief Executive Officer, Kai-Shing Tao ("Tao"). Taken together, these statements falsely conveyed to a reasonable reader that Remark was a Chinese company in financial distress engaged in improper or illegal business activities, and that portrayal, amplified by additional false details, caused immediate and foreseeable harm to Plaintiffs.

2.      Prior to publication, Tao sought to prevent inaccuracies by providing Politico with accurate information about Remark's operations and partnerships.

3.      Politico's reporter disregarded this information and instead pursued a pre-determined narrative, including, among other false claims, that Remark was engaged in

government surveillance activities, an allegation Defendants knew or should have known was untrue.

4.     The assertion that Remark is a Chinese company was false and misleading; such characterization is no more accurate than describing Apple or Tesla as Chinese companies based on their use of China-based suppliers.

5.     In fact, Remark is a U.S. company, and Discovery Communications, a U.S. media company, was one of its significant shareholders. This publicly available information was apparently ignored.

6.     This action is based on articles published on September 30, 2024, and February 12, 2025, by Politico, which falsely described Remark as having "ties to China" and "shaky financials," and linked Plaintiffs to government surveillance activities.

7.     These statements were presented as factual assertions rather than opinion. Politico knew or recklessly disregarded that Remark has no ties to the Chinese government, has never participated in government surveillance programs, and operates as a U.S. company with established international business relationships and technology partnerships, including with NVIDIA, PNY, Oracle, and Microsoft.

8.     Politico's reckless disregard for the truth caused substantial harm to Plaintiffs' business and reputation. Immediately after publication, many existing and prospective partners, including PNY Technologies, rescinded or canceled collaborations with Plaintiffs as a direct result of the articles.

9.     The publications deterred investors and partners, disrupted business negotiations, impaired Remark's ability to raise capital, and damaged Mr. Tao's personal reputation by

portraying him as tied to foreign government surveillance and as leading a company with "shaky financials."

10.     Further, Defendants ignored Plaintiffs' attempts to correct the false narrative and failed to exercise sound journalistic practices. The articles presented no topics requiring urgent reporting. Plaintiffs are not public figures, and neither the September 30, 2024 nor the February 12, 2025 article addressed matters of genuine public concern. The Constitution does not protect false and defamatory reporting that causes irreparable harm to a business and its reputation.

11.     The publications did not involve constitutionally protected commentary on public officials or issues of urgent public importance. They addressed private business operations, where accuracy was required and no urgency justified errors.

12.     Unlike urgent reporting on breaking events, these articles mischaracterized commercial relationships and financial disclosures that could have, and should have, been carefully verified before publication.

13.     Defendants' failure to investigate, despite having ample time and information, shows their reckless and malicious disregard for the truth.

14.     This case is not an attempt to restrict constitutionally protected free speech. It concerns the deliberate dissemination of false factual assertions about private individuals and a U.S. business, where no heightened First Amendment protections apply.

## **PARTIES**

15.     Plaintiff Remark Holdings, Inc. ("Remark") is incorporated in Nevada and maintains its principal place of business in Las Vegas, Nevada.

16.     Plaintiff Remark Holdings, Inc. is a U.S.-incorporated artificial intelligence and video analytics company headquartered in Las Vegas, Nevada, with research and development operations in London.

17.     Remark has developed and commercialized its flagship Smart Safety Platform ("SSP"), an integrated suite of AI-driven tools that provide real-time monitoring and detection capabilities. SSP incorporates facial recognition, behavioral analysis, crowd management, and fire and smoke detection, enabling clients to identify potential risks and respond rapidly to protect life and property.

18.     Remark's technology has been recognized internationally and SSP has been presented at high-profile industry conferences, including the Smart City Expo World Congress in Barcelona and the New York City Smart City Expo.

19.     These events provided a global stage for demonstrating the platform's capabilities to government officials, private-sector stakeholders, and technology partners.

20.     Remark is a member of NVIDIA's Metropolis partner ecosystem, a curated program of AI developers recognized for expertise in advanced video analytics.

21.      Membership in this program reflects peer-reviewed validation of Remark's technological leadership and positions alongside leading companies developing AI safety applications.

22.     Remark has also secured strategic partnerships with PNY Technologies, Oracle, and Microsoft.

23.     In January 2024, Remark entered into a five-year agreement with Microsoft that included $2 million in Azure cloud computing credits and approximately $700,000 in consulting support.

24.     Plaintiff Kai-Shing Tao ("Tao") is an American citizen and the Chief Executive Officer of Remark. Under his leadership, Remark has expanded its operations and partnerships across the United States, Europe, and Asia.

25.     Defendant Politico LLC ("Politico") is a limited liability company with its principal place of business in Arlington, Virginia. Politico publishes news and commentary that is distributed in New York, throughout the United States, and internationally, and conducts business in this District through its publications, subscriptions, advertising sales, and event programming.

26.     Defendant Joe Anuta is a reporter for Politico and, upon information and belief, is a resident of New York, New York.[1]

## JURISDICTION AND VENUE

27.     This Court has jurisdiction under 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

28.     Plaintiff Remark Holdings, Inc. is incorporated in Nevada and maintains its principal place of business in Las Vegas, Nevada.

29.     Plaintiff Tao is an American citizen domiciled in Nevada.

30.     Defendant Politico LLC is a Delaware limited liability company with its principal place of business in Arlington, Virginia. Complete diversity exists between the parties.

31.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in New York City, where the reporting was

---

[1] https://www.politico.com/staff/joe-anuta

done and Politico intentionally directed its publications. The articles were widely read by

policymakers, investors, and business partners in this District, where Plaintiffs maintain business

relationships, suffered reputational and economic harm, and where the majority of witnesses are

located.

32.     Politico also conducts continuous business in this District, including distributing

its publications, selling advertising, and hosting New York–based events and programming.

## FACTUAL BACKGROUND

33.     On May 22–23, 2024, Remark was selected by NVIDIA and Oracle to present its

Smart Safety Platform at the Smart City Expo in New York City, held at Pier 36.

34.     At the event, Remark exhibited its technology at the Oracle booth and Tao was

featured as a guest speaker.

35.     During the expo, Politico journalist Defendant Joe Anuta, a City Hall reporter,

approached Tao at the Oracle booth.

36.     Tao intended to greet Anuta and begin a conversation, but before he could do so

another individual at the booth intervened and redirected Anuta away. As a result, the interaction

was cut short.

37.     Politico had direct access to Tao and was aware of his invited role and industry

recognition yet published articles that disregarded these facts and the facts cited in the

introduction and instead advanced a false and defamatory narrative about Plaintiffs.

I.    **Defendants' Publications**

A.  **September 30, 2024, Article**

38.     On September 30, 2024, Defendant Politico published an article titled

"Lawmakers call for audit of Adams administration's tech contracts." (*See* Exhibit 1).

39.     In the September 30, 2024, article, Politico described Remark as having "ties to China" and "shaky financials," and identified Tao by name and purported to quote him directly, linking him personally to the same claims and to allegations of government surveillance.

40.     The September 30, 2024 article reported that "a national security analyst and a prominent elected official" had raised concerns about Remark's business in China, and it cited public filings suggesting Remark obtained technology from an "unnamed Chinese business" at a time of heightened U.S. regulatory scrutiny of Chinese technology.

41.     The article further falsely reported that officials of the New York City Fire Department ("FDNY") were "unsatisfied with the technology" provided by Remark.

42.     The article also repeated outside claims that a prior KanKan AI project in China was "likely part of the government's broader domestic surveillance program," and in doing so linked Plaintiffs to alleged surveillance activities on behalf of the Chinese government.

43.     While Politico quoted Tao as disputing any suggestion that Remark worked with the Chinese government or posed a security risk, the article nonetheless advanced this contrary insinuation.

44.     These statements were false and misleading. Remark has no ties to the Chinese government and has never engaged in surveillance projects for any government.

45.     Its China-based subsidiary, KanKan, was limited to life-safety applications, including fire detection, slip-trip-fall monitoring, and school pickup verification.

46.     FDNY officials who evaluated Remark's Smart Safety Platform ("SSP") expressed that they were impressed with the technology and requested additional demonstrations, facts that the article omitted in presenting insinuations as fact.

**B.  February 12, 2025, Article**

47.     On February 12, 2025, Politico published an article titled "*Law enforcement agency investigating AI firm's work with Eric Adams administration.*" (*See* Exhibit 2).

48.     In the February 12, 2025, article, Politico again described Remark as "a Las Vegas-based company with shaky financials and ties to China."

49.     The February 12, 2025, article also reported that the New York City Department of Investigation was "probing" Remark and suggested that a $120,000 consulting contract tied to a city adviser reflected improper influence.

50.     Politico further asserted that Remark "routinely reported millions of dollars in losses" in its SEC filings and presented this information as evidence of financial instability and impropriety.

51.      The article also claimed that Remark "has generated past concern for its work on surveillance projects in China," linking allegations of government surveillance with financial weakness.

52.     These statements and insinuations were false and misleading. Remark has no ties to the Chinese government and has never participated in government surveillance programs.

53.     Remark's use of China-based supply-chain partners is ordinary commercial practice in the global technology industry, consistent with the practices of companies such as Apple and Tesla and does not constitute improper influence.

54.     The reference to SEC-reported operating losses was misleading, as such losses are typical for growth-stage artificial intelligence companies and do not reflect instability.

55.     The article also omitted material context, including that Remark had secured major partnerships with Microsoft, NVIDIA, Oracle, and PNY. That Remark had established these relationships was inconsistent with the claim of "shaky financials."

56.     By omitting these facts, Politico presented insinuations as fact.

## II.    Plaintiff's Attempts to Correct Politico's Reporting to No Avail

57.     Following Politico's publication of the September 30, 2024, article, Plaintiff Tao promptly contacted Politico's reporter to correct inaccuracies and provide clarifying facts.

58.     Tao sought to prevent further dissemination of false narratives by ensuring Politico had accurate information about Remark's operations and partnerships.

59.     During these conversations, Tao explained to the reporter that Politico's characterization of Remark as a "Chinese company" was false and commercially damaging.

60.     He noted that equating Remark with the Chinese government because of supply-chain sourcing was no more accurate than calling Apple or Tesla "Chinese companies" based on their use of China-based suppliers.

61.     Tao also highlighted to the reporter that Discovery Communications, a U.S. media company, was a significant shareholder in Remark during the relevant period.

62.     He explained that this fact contradicted any suggestion that Remark was controlled or directed by foreign interests.

63.     Despite Tao's efforts to correct the record and provide factual context, Politico did not incorporate the information he provided and instead published articles repeating the same false claims.

64.     On August 29, 2025, Plaintiffs' counsel sent Politico a pre-litigation demand letter identifying false and defamatory statements in the September 30, 2024, and February 12, 2025, articles, and requesting retraction and correction. (*See* Exhibit 3).

65.     On September 15, 2025, Politico, through counsel, responded to the demand letter and declined to retract the publications. (*See* Exhibit 4).

**III.    Resulting Harm to Plaintiffs**

66.     Politico's September 30, 2024, and February 12, 2025, articles caused harm to Plaintiffs' business and reputation.

67.      The publications created doubt about Remark's financial stability and independence, and they linked Tao personally to claims of impropriety.

68.     The publication of the September 30, 2024, and February 12, 2025, articles deterred potential investors at a time that Plaintiffs were engaged in capital-raising efforts and commercial negotiations, some of which were delayed or discontinued after the articles appeared.

69.     Following the September 30, 2024 article, Plaintiffs experienced immediate and material consequences. On October 2, 2024, two days after the Politico's publication of the first article, PNY Technologies sent Plaintiffs a letter confirming that, at NVIDIA's request, Remark would be removed from PNY's Smart City Barcelona booth, notwithstanding Remark's history of being invited to participate in PNY booths at prior smart city conferences. (*See* Exhibit 5).

70.     The Smart City Barcelona event was a major industry showcase, and Plaintiffs had invested substantial marketing resources to prepare for their participation.

71.     Being removed from the booth deprived Plaintiffs of valuable international exposure, impaired their ability to present their AI platform alongside global technology leaders, and wasted the sunk costs already expended for the event.

72.     Aside from the immediate cancellation by PNY at NVIDIA's request, Politico's articles also affected Plaintiffs' other existing partners by casting doubt on Remark's stability despite its collaborations with Microsoft, Oracle, and additional industry counterparts.

73.     Politico's articles impaired Plaintiffs' ability to leverage those relationships to support further growth.

## CLAIMS

### FIRST CLAIM FOR RELIEF
(Defamation/Libel)

74.     Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

75.     Defendants published false and defamatory statements concerning Plaintiffs in Politico articles dated September 30, 2024, and February 12, 2025.

76.     The statements included assertions that Remark had "ties to China," that it had "shaky financials," that it was linked to government surveillance activities, and that officials of the New York City Fire Department were "unsatisfied with the technology."

77.     The September 30, 2024 article also reported that "a national security analyst and a prominent elected official" had raised concerns about Remark's business in China and cited public filings to suggest that Remark obtained technology from an "unnamed Chinese business," while ignoring Tao's contemporaneous denial that Remark had ties to the Chinese government.

78.     These statements were published to a wide audience of readers, including policymakers, investors, and business partners, through Politico's national and international news platform.

79.     The statements were false and presented as fact rather than opinion.

80.     The statements were defamatory per se because they disparaged Plaintiffs in their business, profession, and trade, and imputed misconduct and impropriety.

81.     Tao offered to explain and correct the record directly to Politico's reporter after the September 2024 article, but Defendants repeated the same false narrative in the February 12, 2025, article, and later declined Plaintiffs' formal demand for retraction.

82.     As a direct and proximate result, Plaintiffs suffered reputational injury, diminished goodwill, lost investment opportunities, and financial harm, including the October 2, 2024, cancellation of Plaintiffs' participation in PNY Technologies' Smart City Barcelona booth at NVIDIA's request.

## SECOND CLAIM FOR RELIEF
### (Defamation/Defamation Per Se)

83.     Plaintiffs repeat and reallege paragraphs 43 through 50 as if fully set forth herein.

84.     The statements described above disparaged Plaintiffs in their business, trade, and profession, and imputed conduct inconsistent with the proper exercise of lawful business practices.

85.     By falsely attributing foreign government ties, financial instability, and misconduct to Plaintiffs despite Tao's denials and Plaintiffs' established partnerships with Microsoft, NVIDIA, Oracle, and PNY, Defendants' publications constitute defamation per se.

86.     By accusing Plaintiffs of foreign government ties, financial instability, and misconduct in their business, Defendants' publications constitute defamation per se.

87.     As a result of Defendants' publications, Plaintiffs suffered presumed damages, as well as actual damages, including reputational injury, loss of goodwill, impairment of capital-raising efforts, and financial harm.

## THIRD CLAIM FOR RELIEF
### (Tortious Interference with Prospective Business Opportunities)

88.     Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

89.     Two days after Politico's September 30, 2024, article, Plaintiffs' longstanding collaborations with industry partners were disrupted. On October 2, 2024, PNY Technologies sent Plaintiffs a letter confirming that, at NVIDIA's request, Remark would be removed from PNY's Smart City Barcelona booth.

90.     Plaintiffs are informed and believe that NVIDIA's decision to remove Remark from its Metropolis partner program was influenced by Politico's false portrayal of Remark as a "Chinese company."

91.     At all relevant times, Plaintiffs maintained ongoing and prospective business relationships with investors, commercial partners, and governmental agencies, including Microsoft, NVIDIA, Oracle, PNY, and municipal entities. These relationships were reasonably certain to result in economic benefit to Plaintiffs.

92.     Defendants were aware of Plaintiffs' existing and prospective business opportunities and understood that Plaintiffs' credibility with investors and partners was essential to those relationships.

93.     Defendants intentionally and unjustifiably interfered with those opportunities by publishing false statements in Politico articles dated September 30, 2024, and February 12, 2025, including assertions that Plaintiffs had "ties to China," maintained "shaky financials," and were linked to government surveillance programs.

94.     Defendants published these statements knowing, or in reckless disregard of the likelihood, that they would undermine Plaintiffs' professional credibility, deter investors, and disrupt ongoing negotiations.

95.     As a result, Plaintiffs suffered economic losses, including impaired capital-raising

efforts, lost investor confidence, disrupted commercial negotiations, and reputational injury that

reduced their ability to secure business opportunities.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their

favor and against Defendants, jointly and severally, on all claims, and award damages in an

amount not less than fifty million dollars ($50,000,000), or in such greater amount as may be

determined by a jury.

## JURY DEMAND

144.     Plaintiffs demand a trial by jury on all issues so triable.


Dated: September 29, 2025
        New York, New York


                                        By: */s/ Robert Hantman*
                                        Robert J. Hantman, Esq.
                                        Attorney Bar Code: RH3947
                                        HANTMAN & ASSOCIATES
                                        www.hantmanlaw.com
                                        1120 Avenue of the Americas 4th Floor
                                        New York, NY 10036
                                        Tel: (212) 684-3933
                                        Fax: (646) 380-3299
                                        rhantman@hantmanlaw.com
                                        *Attorney for Plaintiff*