**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REMARK HOLDINGS, INC.,<br>KAI-SHING TAO,<br><br>Plaintiffs,<br><br>v.<br><br>POLITICO LLC, and<br>JOE ANUTA,<br><br>Defendants. | No. 1:25-cv-08067-VM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

BALLARD SPAHR LLP

Kaitlin M. Gurney (*pro hac vice*)
Ballard Spahr LLP
1735 Market St., 51st Fl.
Philadelphia, PA 19103
Tel.: (215) 864-8585
Fax: (215) 864-8999
gurneyk@ballardspahr.com

Sasha Dudding
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 223-0200
Fax: (212) 223-1942
duddings@ballardspahr.com

*Attorneys for Defendants POLITICO LLC and Joe Anuta*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ........................................................................................2

I. Politico's Reporting About Remark........................................................................................2

II. Remark and Tao File this Lawsuit ........................................................................................4

III. Plaintiffs State their Complaint Requires No Amendment........................................................................................5

ARGUMENT ........................................................................................6

I. The Challenged Statements Are Not "Of and Concerning" Tao ........................................................................................6

II. The Challenged Statements Are Either Substantially True or Incapable of Being Proven True or False ........................................................................................8

III. The Challenged Statements Are Not Defamatory and the Implication Alleged Is Unreasonable........................................................................................12

IV. The Articles Are Protected by New York's Fair Report Privilege ........................................................................................13

V. The Complaint Fails to Plausibly Plead Actual Malice, as Required........................................................................................16

VI. Plaintiffs' Tortious Interference Claim Fails for the Same Reasons and on Its Own Merits ........................................................................................18

VII. Defendants Are Entitled to Attorney's Fees and Costs ........................................................................................21

CONCLUSION........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Amendment Praetorian v. New York Times Co.*,
2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ....8, 18

*Able Energy, Inc. v. Marcum & Kliegman LLP*,
69 A.D.3d 443 (1st Dep't 2010) ....15

*Adelson v. Harris*,
774 F.3d 803 (2d Cir. 2014)....22

*Alf v. Buffalo News, Inc.*,
21 N.Y.3d 988 (2013) ....14

*Alyeska Pipeline Service Co. v. Wilderness Society*,
421 U.S. 240 (1975)....21

*Beauty Beauty USA, Inc. v. Chin Hong Luo*,
2011 WL 4952658 (S.D.N.Y. Oct. 13, 2011) ....12

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015)....16

*Biro v. Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013)....18

*Bisimwa v. St. John Fisher College*,
194 A.D.3d 1467 (4th Dep't 2021) ....13

*Bobulinski v. Tarlov*,
2025 WL 872178 (S.D.N.Y. Mar. 20, 2025) ....22

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024).... *passim*

*Brimelow v. New York Times Co.*,
2021 WL 4901969 (2d Cir. Oct. 21, 2021)....17

*Cardone v. Empire Blue Cross & Blue Shield*,
884 F. Supp. 838 (S.D.N.Y. 1995)....8

*Chao v. Mount Sinai Hospital*,
476 F. App'x 892 (2d Cir. 2012) ....18, 19

*Chau v. Lewis*,
935 F. Supp. 2d 644 (S.D.N.Y. 2013)........................................8, 12

*Church of Scientology International v. Behar*,
238 F.3d 168 (2d Cir. 2001)........................................6, 7, 16, 17

*Cooper v. Franklin Templeton Invetments*,
2023 WL 3882977 (2d Cir. June 8, 2023)........................................2

*Cotton v. Slone*,
4 F.3d 176 (2d Cir. 1993)........................................21

*Cummings v. City of New York*,
2020 WL 882335 (S.D.N.Y. Feb. 24, 2020)........................................14

*Edwards v. National Audubon Society*,
556 F.2d 113 (2d Cir. 1977)........................................9, 17

*Egiazaryan v. Zalmayev*,
880 F. Supp. 2d 494 (S.D.N.Y. 2012)........................................12

*Epoch Group, Inc. v. Politico*,
2021 WL 5850036 (Sup. Ct. N.Y. Cnty. Dec. 9, 2021)........................................22

*Friedman v. Bloomberg L.P.*,
884 F.3d 83 (2d Cir. 2017)........................................14, 15

*Ganske v. Mensch*,
480 F. Supp. 3d 542 (S.D.N.Y. 2020)........................................6, 20

*Geiger v. Town of Greece*,
311 F. App'x 413 (2d Cir. 2009)........................................15

*Gilman v. Spitzer*,
538 F. App'x 45 (2d Cir. 2013)........................................7, 8

*Goldman v. Reddington*,
2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021)........................................21

*Heilbut v. Cassava Sciences, Inc.*,
778 F. Supp. 3d 551 (S.D.N.Y. 2025)........................................21

*Henry v. Fox News Network LLC*,
629 F. Supp. 3d 136 (S.D.N.Y. 2022)........................................19

*Hodges v. Lutwin*,
2023 WL 3362836 (2d Cir. May 11, 2023)........................................17

*Kesner v. Buhl*,
590 F. Supp. 3d 680 (S.D.N.Y. 2022)....................16

*Kesner v. Dow Jones & Co.*,
515 F. Supp. 3d 149....................2, 11

*Kinsey v. New York Times Co.*,
991 F.3d 171 (2d Cir. 2021)....................14

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)....................7, 19

*Lader v. Delgado*,
941 F. Supp. 2d 267 (E.D.N.Y. 2013)....................20

*Landa v. American Prospect, Inc.*,
2023 WL 5266334 (E.D.N.Y. Aug. 16, 2023)....................12

*Lesesne v. Brimecome*,
918 F. Supp. 2d 221 (S.D.N.Y. 2013)....................20

*Levin v. McPhee*,
119 F.3d 189 (2d Cir. 1997)....................11

*Medcalf v. Walsh*,
938 F. Supp. 2d 478 (S.D.N.Y. 2013)....................20

*Mestecky v. NYC Department of Education*,
791 F. App'x 236 (2d Cir. 2019)....................11

*MiMedx Group, Inc. v. Sparrow Fund Management LP*,
2018 WL 847014 (S.D.N.Y. Jan. 12, 2018)....................18

*Mirza v. Amar*,
513 F. Supp. 3d 292 (E.D.N.Y. 2021)....................12

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)....................16

*O'Brien v. Lerman*,
117 A.D.2d 658 (2d Dep't 1986)....................13

*Pusey v. Bank of America, N.A.*,
2015 WL 4257251 (E.D.N.Y. July 14, 2015)....................6

*Reeves v. Associated Newspapers*,
232 A.D.3d 10 (1st Dep't 2024)....................17

*Rosenberg v. MetLife, Inc.*,
8 N.Y.3d 359 (2007) ....................15

*Sandler v. Simoes*,
609 F. Supp. 2d 293 (E.D.N.Y. 2009) ....................12

*Satanic Temple, Inc. v. Newsweek Magazine LLC*,
774 F. Supp. 3d 688 (S.D.N.Y. 2025)....................16

*Sparrow Fund Management LP v. MiMedx Group, Inc.*,
2021 WL 12101061 (S.D.N.Y. Sept. 28, 2021)....................21

*Stepanov v. Dow Jones & Co.*,
120 A.D.3d 28 (1st Dep't 2014) ....................12, 13

*Tacopina v. O'Keeffe*,
645 F. App'x 7 (2d Cir. 2016) ....................14

*Tannerite Sports v. NBCUniversal News Group*,
864 F.3d 236 (2d Cir. 2017)....................8

*Test Masters Educational Services, Inc. v. NYP Holdings, Inc.*,
2007 WL 4820968 (S.D.N.Y. Sept. 18, 2007)....................14

*Trump v. Trump*,
227 A.D.3d 635 (1st Dep't 2024) ....................17

*Udell v. NYP Holdings, Inc.*,
169 A.D.3d 954 (2d Dep't 2019)....................13

**Statutes**

N.Y. Civ. Rights Law § 70-a ....................21

N.Y. Civ. Rights Law § 74 ....................14

N.Y. Civ. Rights Law § 76-a ....................16, 17, 21

**Other Authorities**

Federal Rule of Evidence 201 ....................2

Federal Rule of Civil Procedure Rule 12 ....................1

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573, 617-18 (2023) ....................16, 22

S52A Sponsor Mem. (July 22, 2020),
https://www.nysenate.gov/legislation/bills/2019/S52....................22

Defendants POLITICO LLC and reporter Joe Anuta ("Defendants" or "Politico") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint of Plaintiffs Remark Holdings, Inc. ("Remark") and the company's chief executive officer, Kai-Shing Tao ("Tao" and together, "Plaintiffs"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Plaintiffs attempt to pursue claims for defamation and tortious interference with prospective business opportunities based on two Politico articles about Remark ("the Articles"): (1) a September 30, 2024 article titled "Lawmakers call for audit of Adams administration's tech contracts," and (2) a February 12, 2025 article titled "Law enforcement agency investigating AI firm's work with Eric Adams administration." Plaintiffs' chief complaint is that the Articles described Remark, an artificial intelligence company, as having "ties to China" and "shaky financials." Compl. ¶ 6. The Complaint should be dismissed as a matter of law for multiple independent reasons.

- *First*, a number of the statements to which Tao objects are not about him at all.
- *Second*, the challenged statements are substantially true.
- *Third*, the statements are not defamatory and Plaintiffs' alleged defamatory implication is unreasonable.
- *Fourth*, the Articles are protected by New York's fair report privilege.
- *Fifth*, even if the statements were not accurate, Plaintiffs' claims would fail because they do not—and cannot—plead facts sufficient to show Defendants made these statements with actual malice.
- *Sixth*, Plaintiffs' tortious interference claim fails for the same reasons as their defamation claims, and is also independently deficient.

*Finally*, because Plaintiffs are pursuing this lawsuit "without a substantial basis in fact

and law," Defendants are entitled to recover their attorney's fees under the New York anti-SLAPP statute protecting them from strategic litigation against public participation.

## STATEMENT OF FACTS[1]

Remark Holdings describes itself as a Nevada company specializing in "artificial intelligence and video analytics." Compl. ¶ 16. Specifically, the company has developed a "Smart Safety Platform[], an integrated suite of AI-driven tools" including "facial recognition, behavioral analysis, crowd management, and fire and smoke detection." *Id*. ¶ 17. Tao, Remark's chief executive officer, is an admitted "public figure." *Id*. Ex. 3 at 4.

### I. Politico's Reporting About Remark.

On September 29, 2024, Politico published its first article about Remark, which Plaintiffs do not challenge in this litigation. The article by reporters Joe Anuta, Sally Goldenberg and Maya Kaufman titled, "*Adams aide — and a close personal friend — pushed city officials to hire tech firm*," discussed Remark's connections to Timothy Pearson, an adviser to Mayor Eric Adams. *See* Declaration of Kaitlin M. Gurney ("Gurney Decl.") Ex. C ("September 29 Article") at 2.[2] According to the September 29 Article, Pearson connected Remark with the New York City Fire Department, which tested Remark's "camera-based fire-detection software [but] declined to enter into a contract." *Id.* The article also explained that Remark's fire-detection

[1] Except where otherwise noted, Defendants assume the Complaint's allegations are true solely for purposes of this Motion to Dismiss.

[2] The Court can consider the September 29 Article, the Politico Articles at issue, Remark's Securities and Exchange Commission filings, and the May 25, 2022 Protocol article, which is hyperlinked in Politico's February 12 article, in deciding this motion because they are incorporated by reference in the Complaint and integral to Plaintiffs' claim. *See* Compl. ¶¶ 6, 42, 50, 54; Gurney Decl. Exs. A-E; *Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977, at *1 n.2 (2d Cir. June 8, 2023); *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 159 n.1, 174 n.5 (S.D.N.Y. 2021). The public records are also judicially noticeable. *See* Fed. R. Evid. 201(b)(2).

technology had been tested at a city migrant shelter. *Id.* Some city officials expressed concerns that the technology posed a security risk, but Tao, who was quoted in the article, said it was designed to "save lives and help officials better deploy resources." *Id.*

The next day, on September 30, 2024, Politico published a follow-up article about Remark that is a subject of this litigation. The September 30 article was written by Maya Kaufman—not Defendant Anuta—and titled, "Lawmakers call for audit of Adams administration's tech contracts." *See* Gurney Decl. Ex. B ("September 30 Article") at 1. Politico reported that "[a] trio of [New York City] lawmakers has asked the city comptroller's office to conduct an 'immediate and thorough audit of technology contracts,' following a POLITICO investigation into an artificial intelligence company's efforts to push its way into Mayor Eric Adams' administration." The three lawmakers opined that Remark's connections to mayoral aide Pearson "raise[d] serious questions about the integrity of the city's procurement processes, which appear vulnerable to abuse and risk eroding public trust in our government." *Id.*

On February 12, 2025, Joe Anuta and Maya Kaufman published another Politico article about Remark, titled "Law enforcement agency investigating AI firm's work with Eric Adams administration." *See* Gurney Decl. Ex. A ("February 12 Article"). The February 12 Article is also challenged in Plaintiffs' Complaint. It reported that "[t]he New York City Department of Investigation is probing an artificial intelligence company whose technology was piloted in a migrant shelter at the behest of one of Mayor Eric Adams' former top aides, records show." *Id.* at 1. The February 12 Article continued: "[t]he department's interest in Remark Holdings — a Las Vegas-based company with shaky financials and ties to China — follows a POLITICO investigation last year that documented how senior City Hall adviser Timothy Pearson helped the company gain a foothold in the administration." *Id.* Pearson, the Article noted, had resigned in

September 2024, "after federal agents seized his phone as part of a corruption probe." *Id.*

## II. **Remark and Tao File this Lawsuit.**

On August 29, 2025, eleven months after the first Article was published, Plaintiffs sent Politico a retraction demand regarding the September 30 and February 12 Articles. Compl. Ex. 3. Politico responded on September 15, 2025, noting that it was surprised to hear from Plaintiffs nearly a year post-publication. Politico declined to retract the Articles, stating that they were substantially true and that Plaintiffs' threatened claim would be subject to the New York anti-SLAPP statute. *Id.* Ex. 4.

On September 29, 2025, just shy of the one-year mark, Plaintiffs filed this lawsuit, asserting two claims for defamation against Defendants Politico and Anuta, who wrote only the February 12 Article. *Id*. ¶¶ 74-87. Plaintiffs contend that the September 30 and February 12 Articles were defamatory because they "falsely conveyed to a reasonable reader that Remark was a Chinese company in financial distress engaged in improper or illegal business activities." *Id*. ¶ 1. Plaintiffs also bring a claim for tortious interference with prospective business opportunities, based on their allegations that the articles harmed their reputation with business partners. *Id*. ¶¶ 88-95. On that basis, Plaintiffs seek $50 million in damages. *Id*. at 14.

The Complaint challenges both the September 30 and February 12 Articles, but also quotes and attaches the unchallenged September 29 Politico Article. *See id.* Ex. 1. Therefore, for the avoidance of further confusion, Defendants provide the following chart of the statements referenced in the Complaint as they actually appear in the three Articles.

| **Date of Politico Article** | **Statements Quoted in Complaint** |
|---|---|
| February 12, 2025<br><br>*See* Gurney Decl. Ex. A. | • Remark is "'a Las Vegas-based company with shaky financials and ties to China.'" Compl. ¶ 48; *cf. id.* ¶ 39 (erroneously claiming the September 30 Article also "described Remark as having 'ties to China' and 'shaky financials'"). |

| Date of Politico Article | Statements Quoted in Complaint |
|---|---|
| | • "The New York City Department of Investigation was 'probing' Remark." *Id.* ¶ 49.<br><br>• "Remark 'routinely reported millions of dollars in losses' in its SEC filings." *Id.* ¶ 50.<br><br>• "Remark 'has generated past concern for its work on surveillance projects in China.'" *Id.* ¶ 51. |
| September 30, 2024<br><br>*See* Gurney Decl. Ex. B. | • "Officials of the New York City Fire Department ('FDNY') were 'unsatisfied with the technology' provided by Remark." *Id.* ¶ 41. |
| September 29, 2024<br><br>*See* Gurney Decl. Ex. C.<br><br><u>Note:</u> This Article is not at issue in this litigation. *See* Compl. ¶ 75 ("Defendants published false and defamatory statements concerning Plaintiffs in Politico articles dated September 30, 2024, and February 12, 2025"). | • "'A national security analyst and a prominent elected official' had raised concerns about Remark's business in China." *Id.* ¶ 40 (incorrectly claiming this statement appears in the September 30 Article).<br><br>• "Remark obtained technology from an 'unnamed Chinese business' at a time of heightened U.S. regulatory scrutiny of Chinese technology." *Id.* (incorrectly claiming this statement appears in the September 30 Article).<br><br>• "A prior KanKan AI project in China was 'likely part of the government's broader domestic surveillance program.'" *Id.* ¶ 42 (incorrectly claiming this statement appears in the September 30 Article). |

## III. <u>Plaintiffs State their Complaint Requires No Amendment.</u>

Consistent with this Court's Individual Rules, the parties exchanged pre-motion letters with each other and the Court. *See* Dkt. Nos. 14, 15. In their pre-motion letter, Politico raised all of the arguments set forth in this Motion, and alerted counsel for Plaintiffs that their "Complaint erroneously attaches an unchallenged September 29, 2024 Politico article, and quotes it instead of the September 30 article." Dkt. No. 14 at 1 n.1. In response, Plaintiffs' pre-motion letter stated that they had reviewed "the alleged pleading deficiencies" Politico identified and that no amendment was required, because they "believe the Complaint provides fair notice of the claims and grounds upon which they rest." Dkt. No. 15 at 1, 2. After agreeing to a briefing schedule

with Plaintiffs and the Court, Dkt. Nos. 16-19, this Motion timely follows.

## ARGUMENT

To plead defamation, Plaintiffs must plausibly allege that the challenged statements "were (1) of and concerning [them], (2) likely to be understood as defamatory by the ordinary person, (3) false, and (4) published with actual malice, that is, either knowledge of falsity or reckless disregard of the truth." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). As this Court has recognized, "New York courts encourage the resolution of defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020) (cleaned up). Moreover, "New York courts have kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action" and dismiss duplicative tort claims "where the entire injury complained of flows from the effect on [a plaintiff's] reputation." *Pusey v. Bank of Am., N.A.*, 2015 WL 4257251, at *4 (E.D.N.Y. July 14, 2015) (citations omitted).

This case is one that should end at the pleading stage. Plaintiffs cannot state a defamation claim as a matter of law for multiple separate and independent reasons. Their tortious interference claim is wholly duplicative of their defamation claims, and in any event, they fail to plausibly plead the elements of that claim. Further, Plaintiffs should be awarded their attorney's fees under New York's anti-SLAPP law for being subjected to a lawsuit with no substantial basis in fact or law.

### I. <u>The Challenged Statements Are Not "Of and Concerning" Tao.</u>

Tao's claims should be dismissed for the simple reason that the Politico statements he challenges are not about him. Like all defamation plaintiffs, Tao bears the burden of establishing that the statements at issue are "of and concerning" him—in other words, that readers would

reasonably understand the statements to be referring to him. *See Gilman v. Spitzer*, 538 F. App'x 45, 47 (2d Cir. 2013). This requirement "stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory." *Kirch v. Liberty Media Corp*., 449 F.3d 388, 399-400 (2d Cir. 2006). Whether a challenged statement is of and concerning the plaintiff is a question of law that "should ordinarily be resolved at the pleading stage." *Behar*, 238 F.3d at 173.

Here, no statements at issue name Tao. As set forth in the chart above, Plaintiffs challenge just one statement in the September 30 Article: that "officials of the New York City Fire Department ('FDNY') were 'unsatisfied with the technology' provided by Remark." Compl. ¶ 41. Tao's name appears nowhere in this line. Plaintiffs also allege that the September 30 Article "identified Tao by name and purported to quote him directly," and that "while Politico quoted Tao as disputing any suggestion that Remark worked with the Chinese government or posed a security risk, the article nonetheless advanced this contrary insinuation." *Id*. ¶¶ 39, 43. Plaintiffs do not, however, allege that any of the quotes by or mentions of Tao himself are defamatory—rather, they take issue with the Article's portrayal of *Remark*.

As to the February 12, 2025 Article, Plaintiffs challenge Politico's description of "Remark as 'a Las Vegas-based company with shaky financials and ties to China,'" but this statement also does not name Tao. *Id.* ¶ 48. None of the other challenged lines from this Article mention Tao, either: that "the New York City Department of Investigation was 'probing' Remark," *id*. ¶ 49, that "Remark 'routinely reported millions of dollars in losses' in its SEC filings," *id*. ¶ 50, or that "Remark 'has generated past concern for its work on surveillance projects in China,'" *id*. ¶ 51. These statements are all about Remark, not Tao. Indeed, Plaintiffs

do not even mention Tao in their description of the February 12 Article. *See id.* ¶¶ 47-56.

Black-letter law provides that allegedly defamatory statements about a company cannot give rise to a claim by its leaders. *See, e.g.*, *Gilman*, 538 F. App'x at 47 (allegations of illegal activity by insurance company were not of and concerning its senior executive); *Chau v. Lewis*, 935 F. Supp. 2d 644, 660 (S.D.N.Y. 2013) (rejecting plaintiff's contention that "every unflattering comment made about CDO managers" in book "is a personal libelous accusation concerning [plaintiff] simply because [plaintiff] is a CDO manager who appears as a central representative character"), *aff'd*, 771 F.3d 118 (2d Cir. 2014); *Cardone v. Empire Blue Cross & Blue Shield*, 884 F. Supp. 838, 847-48 (S.D.N.Y. 1995) (allegations that insurance company had sent erroneous data to regulators were not of and concerning its former CEO); *1st Amend. Praetorian v. N.Y. Times Co.*, 2025 WL 949575, at *13 (S.D.N.Y. Mar. 28, 2025) ("[A]lthough Plaintiff is mentioned in parts of the articles, . . . that does not mean that all of the statements concern Plaintiff; this is even true when the plaintiff is described as a part of this larger group or an example of a member of the group.").

Accordingly, Tao's defamation claims should be dismissed for failure to meet the essential "of and concerning" requirement.

## II. <u>The Challenged Statements Are Either Substantially True or Incapable of Being Proven True or False.</u>

As to the statements that Plaintiffs have "ties to China" and "shaky financials," Plaintiffs fail to meet their burden to "plead facts that, if proven, would establish that [Defendants'] statements were not substantially true," meaning they "would not have a different effect on the mind of the reader" than the "pleaded truth." *Tannerite Sports v. NBCUniversal News Grp.*, 864 F.3d 236, 242, 246 (2d Cir. 2017). "Shaky" is also a matter of opinion incapable of being proven true or false, as is the descriptor "ties," and the statement that FDNY was "'unsatisfied with the

technology' provided by Remark." Compl. ¶¶ 6, 39, 41.

**First,** Remark's public filings show it *does* have "ties to China." *Id*. ¶¶ 39, 48. Remark's 10-Q filed in January 2025 contains an extensive discussion of the company's business ventures in China, including its relationship with an entity defined only as "China Business Partner." The 10-Q explains Remark's relationship with the entity:

> We interact with an unrelated entity (the "China Business Partner") in more than one capacity. Firstly, in previous years we worked with the China Business Partner to earn revenue by obtaining business from some of the largest companies in China. Secondly, our artificial intelligence business in the U.S. has purchased substantially all of its inventory from a subsidiary of the China Business Partner which manufactures certain equipment to our specifications. Though we did not make any such inventory purchases during the nine months ended September 30, 2024, we did purchase software for internal use from the China Business Partner totaling approximately $0.7 million. In addition, a member of our senior leadership team maintains a role in the senior management structure of the China Business Partner.

Gurney Decl. Ex. D ("Remark 10-Q") at 25.

And, Politico's February 12 Article's statement that "Remark has generated past concern for its work on surveillance projects in China," is based on a May 25, 2022 article by the publication Protocol, which it hyperlinks. Compl. ¶¶ 40, 51 & Ex. 1. The Protocol article, "A surveillance AI firm with hidden ties to China is seeking US infrastructure contracts," relied on statements on Remark's own China-facing website about its KanKan AI facial recognition technology, and quoted an expert who opined that the project appeared to be part of the Chinese government's video surveillance program. *See* Gurney Decl. Ex. E. It also quoted then-Sen. Marco Rubio criticizing Remark's work on Florida's Brightline train, citing security concerns about companies with Chinese ties developing U.S. infrastructure. *Id.* As Plaintiffs concede, Tao is a public figure, Compl. Ex. 3 at 4, and Politico may accurately cite such public scrutiny of Remark's work in other news outlets. *See Edwards v. Nat'l Audubon Soc'y*, 556 F.2d 113, 120

(2d Cir. 1977) ("[W]hen a responsible, prominent organization . . . makes serious charges against a public figure, the First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity. What is newsworthy about such accusations is that they were made.") (citation omitted).

**Second,** Remark's public filings show it *does* have "shaky financials." Compl. ¶¶ 39, 48. Politico's reporting drew directly from these filings, accurately stating that the company "routinely reported millions of dollars in losses on financial statements to the Securities and Exchange Commission." Feb. 12 Article at 4. Remark's 10-Q reported a net loss of $9.6 million for the third quarter of 2024, compared to $7.2 million in losses the previous year. *See* Remark 10-Q at 29. As Remark reported to the SEC, "in each fiscal year since our inception, we have incurred operating losses which have resulted in a stockholders' deficit of $55.6 million as of September 30, 2024." *Id.* at 8. These losses were so steep that Remark reported that its "history of recurring operating losses, working capital deficiencies and negative cash flows from operating activities give rise to, and management has concluded that there is*, substantial doubt regarding our ability to continue as a going concern*." *Id.* (emphasis added).

Moreover, Remark's ties to China were one of the main reasons cited in its 10-Q for Remark's shaky financials:

> Lengthy COVID-19 related lockdowns that occurred in various regions in China during 2022 were the initial cause of delays in completing projects for which we had paid in advance. A slow recovery from such lockdowns in addition to increased political tensions between the U.S. and China led to our decision to reduce staff in China, all of which has made progress in completing projects slow. Completing the projects in China and fully recovering the deferred cost of revenue balance will require additional capital resources. Given the ongoing political tensions and that we have limited capital resources for China, factors which have caused uncertainty regarding when or whether we can complete the projects associated with the deferred cost of revenue, we recorded a full impairment of $6.5 million during the three months ended September 30, 2024.

*Id.* at 29.[3] That such losses may be "typical" of other companies, Compl. ¶ 54, does not negate the indisputable point that Remark has struggled financially.

**<u>Third,</u>** the statements that Remark had "shaky financials," "ties" to China, and that FDNY was "unsatisfied" with Remark's technology are non-actionable statements of opinion. *Id.* ¶¶ 6, 39, 41. Under the First Amendment, a statement that does not "imply assertions of objective fact" is nonactionable opinion, and the New York State Constitution provides even broader protection for opinion. *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997) (discussing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18, 20 (1990), and *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 248-55 (1991)). A statement that is "not capable of being objectively characterized as true or false" is one form of protected opinion. *Mestecky v. NYC Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019). Whether a statement constitutes opinion is a legal question for the court to decide. *Chau*, 771 F.3d at 128. In making this threshold determination, courts properly consider the statement itself as well as its "immediate context and the broader social context." *Levin*, 119 F.3d at 197.

Here, "shaky financials," Compl. ¶¶ 39, 48, is a "protected statement of pure opinion, and hardly a bold one given the SEC's filing." *Kesner*, 515 F. Supp. 3d at 188; *see also Chau*, 771 F.3d at 129. Likewise, "ties" is an imprecise word incapable of being proven true or false. "When used in political discourse, terms of relation and association often have meanings that are 'debatable, loose, and varying,' rendering the relationships they describe insusceptible of proof

[3] Additionally, in an August 7, 2024 news release, "Remark Holdings Resolves Debt Default," Tao is quoted publicly acknowledging the company's losses, stating that "together, we turned our financial challenges into opportunities and now Remark begins the process of transforming our balance sheet to capitalize on our exciting future in AI." *See* Press Release, Remark Holdings Resolves Debt Default, Remark Holdings (Aug. 7, 2024), https://www.prnewswire.com/news-releases/remark-holdings-enters-into-debt-exchange-agreement-with-mudrick-capital-management-lp-resolving-all-previous-default-issues-302216564.html.

of truth or falsity." *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 512 (S.D.N.Y. 2012); *see Landa v. Am. Prospect, Inc.*, 2023 WL 5266334, at *7 (E.D.N.Y. Aug. 16, 2023) (definition of "gang" is non-actionable opinion). So, too, is the statement that FDNY was "unsatisfied" with Remark's technology, Compl. ¶ 41, which was, in any event, part of a sentence also noting that "the city nonetheless quietly piloted Remark's technology as a fire detection tool at a Brooklyn migrant shelter." *See* Sept. 30 Article at 2; *cf., e.g.*, *Beauty Beauty USA, Inc. v. Chin Hong Luo*, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011) (allegation that defendant sells "inferior goods" is non-actionable opinion); *Sandler v. Simoes*, 609 F. Supp. 2d 293, 302 (E.D.N.Y. 2009) (defendant's statements to consumer protection agencies about plaintiff's business were "clearly the opinion of a dissatisfied customer based upon personal dealings with the plaintiff" and therefore non-actionable); *see also Mirza v. Amar*, 513 F. Supp. 3d 292, 299 (E.D.N.Y. 2021) (defendant's allegedly "false statements about [plaintiffs'] product do not convey facts about plaintiffs, but merely serve to support her stated opinion about" the product). Plaintiffs' claims should therefore be dismissed on these grounds as well.

## III. <u>The Challenged Statements Are Not Defamatory and the Implication Alleged Is Unreasonable.</u>

It is not defamatory to state that a company merely has ties to China or has lost money. *See, e.g.*, *Chau*, 935 F. Supp. 2d at 666 (statement in book by defendant hedge fund manager "that he wished to short [plaintiff's] investments does not defame [plaintiff]"); *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 35 (1st Dep't 2014) (news outlet's identification of plaintiff as "former Russian diplomat" was "clearly true" and "also clearly not expressly defamatory"). Perhaps for this very reason, Plaintiffs assert an unreasonable implication that the words of the challenged statements will not bear: they allege that the Articles imply that Remark "engaged in improper or illegal" "government surveillance activities." Compl. ¶¶ 1, 3.

Where, as here, the challenged statements themselves are not defamatory but Plaintiffs argue that they carry a false and defamatory implication, Plaintiffs' claims are subject to dismissal unless they "make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Udell v. NYP Holdings, Inc.*, 169 A.D.3d 954, 957 (2d Dep't 2019); *see also, e.g.*, *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 174 (S.D.N.Y. 2024) (same).

Here, dismissal is required because Plaintiffs fail to make the required rigorous showing. The Complaint is devoid of any allegations that Defendants intended or endorsed the alleged defamatory inference. They allege that the Articles "linked Plaintiffs to alleged surveillance activities on behalf of the Chinese government," Compl. ¶¶ 42—which they did not—but make no claims whatsoever that this purported "link" was intended and endorsed. These allegations fall well short of the high bar required to plausibly plead a defamatory inference. *See, e.g.*, *Stepanov*, 120 A.D.3d at 39 (affirming dismissal and holding, as to statement that plaintiff was a "former Russian diplomat," that "there is no reasonable reading of this true fact that can lend itself to a defamatory implication"); *see also, e.g.*, *Bisimwa v. St. John Fisher Coll.*, 194 A.D.3d 1467, 1472 (4th Dep't 2021) (same, where "there is no reasonable reading of th[e] true fact[s] that can lend itself to a defamatory implication"); *Udell*, 169 A.D.3d at 957 (same); *O'Brien v. Lerman*, 117 A.D.2d 658, 659 (2d Dep't 1986) (same, where statements "cannot reasonably be understood by the mind of the ordinary intelligent reader as imputing to plaintiff" the allegedly defamatory implication).

## IV. The Articles Are Protected by New York's Fair Report Privilege.

The Articles are fully protected under New York's statutory fair report privilege. That privilege provides that a "civil action cannot be maintained against any person, firm or

corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. Civ. Rights Law § 74.

The privilege is invoked when "[t]he ordinary viewer or reader can determine from the publication itself that the publication is reporting on [the] proceeding." *Kinsey v. N.Y. Times Co*., 991 F.3d 171, 179 (2d Cir. 2021) (cleaned up). In such cases, "[a] statement is deemed a fair and true report if it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Friedman v. Bloomberg L.P*., 884 F.3d 83, 93 (2d Cir. 2017) (cleaned up).

New York courts have adopted a "liberal interpretation of the 'fair and true report' standard" in order "to provide broad protection to" accounts of official proceedings. *Id*. The language used in such accounts "must be accorded some degree of liberality" and "should not be dissected and analyzed with a lexicographer's precision." *Alf v. Buffalo News, Inc.*, 21 N.Y.3d 988, 990 (2013). Moreover, as the Second Circuit has noted in applying the privilege, a news report "is, by its very nature, a condensed report of events which must, of necessity, reflect to some degree the subjective viewpoint of its author." *Tacopina v. O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016). "Crucially, § 74 protects reporting on charges and allegations made in proceedings regardless of whether the underlying allegations are in fact true." *Cummings v. City of New York*, 2020 WL 882335, at *16 (S.D.N.Y. Feb. 24, 2020). Whether a report is protected by the privilege is a question of law for the court to decide. *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 2007 WL 4820968, at *3 (S.D.N.Y. Sept. 18, 2007).

Here, Defendants fairly and accurately reported on official proceedings. As to the September 30 Article, readers would understand from the start that it was reporting on official proceedings, as it was headlined "*Lawmakers call for audit* of Adams administration's tech

contracts." *See* Sept. 30 Article (emphasis added). The text of the Article likewise made this clear, reporting that "a trio of lawmakers has asked the city comptroller's office to conduct an 'immediate and thorough audit of technology contracts,'" and hyperlinking to the lawmakers' letter. *Id.*

Likewise, the February 12 Article plainly reports on an official investigation by the New York City Department of Investigation. *See* Compl. ¶ 49. The Article's headline again makes its reliance on the government proceedings plain: "*Law enforcement agency investigating* AI firm's work with Eric Adams administration." Feb. 12 Article (emphasis added). So, too, did the Article itself. *See* Compl. ¶ 49 ("The New York City Department of Investigation is probing" Remark).

Defendants' reports on these official proceedings are squarely covered by the fair report privilege. *See Geiger v. Town of Greece*, 311 F. App'x 413, 417 (2d Cir. 2009) (state attorney general investigation covered by privilege); *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007) (explaining that the privilege "can extend to preliminary or investigative stages of the process, particularly where compelling public interests are at stake"); *Able Energy, Inc. v. Marcum & Kliegman LLP*, 69 A.D.3d 443, 443 (1st Dep't 2010) (letter to SEC was privileged because it "potentially could be used by the SEC in a quasi-judicial proceeding. It is irrelevant whether or not the SEC actually commenced such a proceeding.").

Plaintiffs therefore bear the burden of establishing that the Articles are not "substantially accurate" reports of these proceedings, which they cannot and do not satisfy. *Friedman*, 884 F.3d at 93. The Complaint barely acknowledges the government proceedings or commentary, much less alleging that Politico substantially misdescribed them. *See* Compl. ¶ 49 (noting only that the February 12 Article "reported that the New York City Department of Investigation was 'probing' Remark"). Because Defendants' Articles are substantially accurate reports of official

proceedings, they are absolutely privileged under New York's broad fair report privilege. On this basis alone, the Complaint should be dismissed with prejudice.

## V. **The Complaint Fails to Plausibly Plead Actual Malice, as Required.**

Because Plaintiffs challenge speech on issues of public interest, they must—but have not and cannot—plausibly allege that Defendants published the statements with actual malice.

Under New York's anti-SLAPP law, a plaintiff challenging speech made in "a public forum in connection with an issue of public interest" must plausibly allege that the defendant published the challenged statements with actual malice, that is, "with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rights Law § 76-a; *see also Bobulinski*, 758 F. Supp. 3d at 179.[4]

The actual malice standard considers whether the speaker had "subjective doubts about the truth of the publication." *Behar*, 238 F.3d at 174. The standard serves the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," even if the debate "may well include vehement, caustic, and sometimes unpleasantly sharp," or even "erroneous," commentary. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270-71 (1964); *see also Bobulinski*, 758 F. Supp. 3d at 179 ("The actual malice standard is intentionally a high bar."). Accordingly, courts routinely dismiss complaints that fail to "plead plausible

[4] This provision of the anti-SLAPP statute is substantive and therefore applies in federal court. *See Satanic Temple, Inc. v. Newsweek Mag. LLC*, 774 F. Supp. 3d 688, 699 (S.D.N.Y. 2025), *appeal filed*, No. 25-868 (2d Cir. Apr. 11, 2025); *Bobulinski*, 758 F. Supp. 3d at 179 n.7; *Kesner v. Buhl*, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022); Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573, 617-18 (2023). In light of the anti-SLAPP law, the Court need not consider at this stage whether Plaintiffs must plead actual malice as a matter of constitutional law because they are public figures, *see Biro v. Conde Nast*, 807 F.3d 541, 542-44 (2d Cir. 2015), though Plaintiffs concede that Tao is a public figure, Compl. Ex. 3 at 4, and acknowledge Remark's international profile, *id.* ¶¶ 18-19.

grounds to infer actual malice by alleging enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Brimelow v. N.Y. Times Co.*, 2021 WL 4901969, at *1 (2d Cir. Oct. 21, 2021).

As a threshold matter, a news outlet such as Politico is a "quintessential public forum." *See Reeves v. Associated Newspapers*, 232 A.D.3d 10, 19 (1st Dep't 2024); *Trump v. Trump*, 227 A.D.3d 635, 636 (1st Dep't 2024). Defendants' reporting relates to an issue of public interest, which includes "any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d); *see Bobulinski*, 758 F. Supp. 3d at 177-78. The challenged reporting about a global company, its CEO, and New York City government are of keen public interest, and Plaintiffs acknowledge that their "technology has been recognized internationally" and "presented at high-profile industry conferences" on "a global stage." Compl. ¶¶ 18-19.

Accordingly, Plaintiffs must plausibly allege that Defendants published the Articles they challenge with actual malice. They do not. First, alleging that Defendants "fail[ed] to investigate" and "disregarded" Tao's denials, *id.* ¶¶ 2-3. 13, 63, does not establish actual malice as a matter of law. *See, e.g.*, *Hodges v. Lutwin*, 2023 WL 3362836, at *4 (2d Cir. May 11, 2023) (alleged "lack of an investigation or failure to consider [plaintiffs'] side of the story" were insufficient "to survive a motion to dismiss"); *Edwards*, 556 F.2d at 121 ("[D]enials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.").

Moreover, Defendants in fact interviewed Tao, quoted his denials, reviewed public filings, cited other news articles' reporting, and spoke with elected officials. Compl. ¶¶ 34-43. Far from evincing a knowing or reckless disregard for the truth, these allegations establish that Defendants undertook careful, thorough research in reporting the Articles. *See, e.g.*, *Behar*, 238

F.3d at 174-75 (plaintiff could not show actual malice given reporter's "extensive research," including requests to interview plaintiff's representative); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 847014, at *8 (S.D.N.Y. Jan. 12, 2018) (contacting plaintiff "shows precisely the opposite of malice"), *R.&R. adopted*, 2018 WL 4735717 (Sept. 29, 2018); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 285 (S.D.N.Y. 2013) (no actual malice where challenged article "appears to be the product of an enormous amount of careful and diligent research"), *aff'd*, 807 F.3d 541.

Plaintiffs' allegations that Defendants refused their retraction demand are likewise insufficient. Compl. ¶ 65. A "failure to retract" does not show actual malice, since it "occurs, by definition, after publication, meaning that its probative value as to a defendant's state of mind at the time of publication is dubious at best." *Biro*, 963 F. Supp. 2d at 281; *accord 1st Amend. Praetorian*, 2025 WL 949575, at *10 (a "refusal to retract does not amount to actual malice either"). If anything, Defendants' position demonstrates that they continued to believe the Articles were accurate as published.

Absent any factual allegations plausibly demonstrating actual malice, Plaintiffs' claims should be dismissed for this separate and independent reason.

## VI. <u>Plaintiffs' Tortious Interference Claim Fails for the Same Reasons and on Its Own Merits.</u>

In addition, Plaintiffs' duplicative claim for tortious interference with prospective business opportunities fails for the same reasons as their defamation claims. *See* Compl. ¶¶ 88-95. "New York law considers claims sounding in tort to be defamation claims . . . where the entire injury complained of by plaintiff flows from the effect on his reputation." *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (quoting *Jain v. Sec. Indus. and Fin. Mkts. Ass'n.*, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009)). This rule applies where, as here,

"the factual allegations underlying" Plaintiffs' "other tort claim[] [is] virtually identical to the facts underlying [their] defamation claim[s]" and the alleged harms "all flow from the effect on [their] reputation caused by defendants' alleged defamatory statements." *Id.* (cleaned up). In such cases, a "district court correctly dismisse[s] [Plaintiffs'] other tort claims as duplicative of [their] defamation claim[s]." *Id.*

Specifically, Plaintiffs' tortious interference claim is based on their allegations that "[t]wo days after Politico's September 30, 2024 article, Plaintiffs' longstanding collaborations with industry partners were disrupted" due to "Politico's false portrayal of Remark as a 'Chinese company,' "in Politico articles dated September 30, 2024, and February 12, 2025." Compl. ¶¶ 88, 90, 93. Plaintiffs allege these articles caused them "reputational injury," as well as "economic losses." *Id.* ¶ 95. Because these allegations are "virtually identical" to those underlying the defamation claims, which target the same statements, and because Plaintiffs' alleged injury "flow[s] from the effect on [their] reputation caused by defendants' alleged defamatory statements," this claim should be dismissed as duplicative. *Chao*, 476 F. App'x at 895.

Plaintiffs' tortious interference claim is independently deficient because it fails to plead the required elements: "(1) [Plaintiffs] had a business relationship with a third party; (2) the defendant[s] knew of that relationship and intentionally interfered with it; (3) the defendant[s] acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant[s'] interference caused injury to the relationship." *Kirch*, 449 F.3d at 400. Critically, as discussed above, "there are no facts indicating that [Defendants] acted out of malice or used improper means[.]" *Henry v. Fox News Network LLC,* 629 F. Supp. 3d 136, 153 (S.D.N.Y. 2022). Plaintiffs allege only that "Defendants intentionally and unjustifiably interfered with

those opportunities by publishing false statements in Politico articles . . . knowing, or in reckless disregard of the likelihood, that they would undermine Plaintiffs'" business relationships. Compl. ¶¶ 93-94. As discussed above, however, Plaintiffs fail to plausibly allege that Defendants published the statements at issue with actual malice—that is, intentionally or recklessly disregarding their falsity. *See supra* Part V; *Lader v. Delgado*, 941 F. Supp. 2d 267, 273 (E.D.N.Y. 2013) (dismissing tortious interference claim based on alleged defamation that "nowhere refers to any conduct that can be construed as rising to a level sufficient to state such a claim").

Moreover, the allegations supporting Plaintiffs' tortious interference claim are wholly conclusory and should not be credited on a motion to dismiss. *See, e.g.*, Compl. ¶¶ 92-93 ("Defendants were aware of Plaintiffs' existing and prospective business opportunities" and "intentionally and unjustifiably interfered with those opportunities"); *cf., e.g.*, *Ganske*, 480 F. Supp. 3d at 557 ("Plaintiff's complaint is devoid of any plausible allegation that Defendant intended to interfere" where "the[] allegations regarding Defendant's intent in [making the allegedly defamatory statement] are no more than conclusory."); *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490–91 (S.D.N.Y. 2013) (holding that "the claim for tortious interference with business relations must be dismissed" where "aside from this conclusory statement" that "plaintiff alleged that defendant acted 'with actual malice,'" plaintiff "does not allege facts that give rise to the plausible inference that the defendants acted with the "sole purpose of inflicting intentional harm" (citation omitted)). Therefore, "even if Plaintiffs' tortious interference claim[] did not sound in defamation," as it does here, "Plaintiff[s] ha[ve] failed to adequately plead th[is] claim[], providing an additional basis for dismissal." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013).

## VII. Defendants Are Entitled to Attorney's Fees and Costs.

If Defendants prevail on this Motion to Dismiss for any of the reasons set forth above, they should be awarded attorney's fees and costs pursuant to New York's anti-SLAPP statute. The law, as amended in 2020, mandates that "costs and attorney's fees *shall* be recovered upon a demonstration" that an action involving public petition and participation "was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1)(a) (emphasis added). An "action involving public petition and participation" is one arising from the "exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a)(2). This fee-shifting provision applies in federal court diversity actions because "[e]ntitlement to attorney's fees is a substantive right under *Erie* [*R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)]," and does not conflict with any federal procedural rules. *Bobulinski*, 758 F. Supp. 3d at 186; *see also, e.g.*, *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 568 (S.D.N.Y. 2025) (concluding that attorney's fees under Section 70-a are recoverable in federal court); *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2021 WL 12101061, at *6-7 (S.D.N.Y. Sept. 28, 2021) (same); *Goldman v. Reddington*, 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021) (same).

The anti-SLAPP statute's provision awarding attorneys' fees reflects the New York legislature's substantive "policy decision that mandatory fee-shifting applies to the subset of cases defined as SLAPP suits where the claim lacks a 'substantial basis'"—including cases where the defendant prevails on a motion to dismiss. *Bobulinski*, 758 F. Supp. 3d at 184-86; *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (in diversity cases, "state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed"); *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993) ("Attorney's fees mandated by state statute are available when a federal court sits in

diversity."); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (finding Nevada anti-SLAPP statute's fee provision substantive and therefore applicable in federal court); Schafer & Valsangikar, 2 J. Free Speech L. at 599-614.

The New York legislature's policy decision to make mandatory fee-shifting "the principal remedy provided to victims of SLAPP suits" was rooted in its awareness that fee awards "protect citizens by encouraging only meritorious litigation," deterring costly, speech-chilling suits. S52A Sponsor Mem. (July 22, 2020), https://www.nysenate.gov/legislation/bills/2019/S52. Further, applying the fee-shifting provision in federal court serves the *Erie* doctrine's "twin aims" of "furthering equitable administration of laws and preventing forum shopping" by not depriving federal court defendants of the law's core remedy. *Bobulinski*, 758 F. Supp. 3d at 186.

Because this case is an action involving public petition and participation and Plaintiffs have failed to state a claim, Defendants request their attorneys' fees if this motion is granted. *See id.* at 190 (permitting defendants to submit a "request for attorney's fees and costs with appropriate documentation"); *see also Bobulinski v. Tarlov*, 2025 WL 872178, at *4 (S.D.N.Y. Mar. 20, 2025) (awarding fees); *Epoch Grp., Inc. v. Politico*, 2021 WL 5850036, at *4 (Sup. Ct. N.Y. Cnty. Dec. 9, 2021) (same).

## CONCLUSION

For each of the foregoing independent reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice, and grant them their attorneys' fees

and such other relief as this Court deems proper.

Dated: March 9, 2026

Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ Kaitlin M. Gurney*

Kaitlin M. Gurney (*pro hac vice*)
Ballard Spahr LLP
1735 Market St., 51st Fl.
Philadelphia, PA 19103
Tel.: (215) 864-8585
Fax: (215) 864-8999
gurneyk@ballardspahr.com

Sasha Dudding
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 223-0200
Fax: (212) 223-1942
duddings@ballardspahr.com

*Attorneys for Defendants POLITICO LLC and Joe Anuta*

**WORD COUNT CERTIFICATION**

I, Kaitlin M. Gurney, hereby certify that this Memorandum contains 7,052 words and is in compliance with Local Rule 7.1. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

Dated: March 9, 2026

*/s/ Kaitlin M. Gurney*
Kaitlin M. Gurney